# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VELEZ,<br><br>                Plaintiff,<br><br>v.<br><br>IL FORNANIO (AMERICA) CORPORATION; TARTINE, INC.;TACOS EL GORDO DE TIJUANA B.C., INC.,<br><br>                Defendants. | Case No.: 3:18-cv-1840-CAB (MDD)<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**<br>**[Doc. No. 12]** |

This matter comes before the Court on Defendant Il Fornaio (America) Corporation ("Il Fornaio") and Tartine Inc.'s ("Tartine") motion to dismiss (hereinafter collectively "Defendants"). [Doc. No 12.[1]] Plaintiff Jose Velez filed his opposition to the motion and the Defendants replied. [Doc. Nos. 14, 15.] The motion is granted for the following reasons.

---

[1] Defendants Il Fornaio and Tartine filed multiple motions to dismiss the complaint [Doc. Nos. 10, 11, 12 and 13]. The Court has reviewed the motions and they all appear to be duplicative of each other, therefore the Court will only consider one of the motions, Doc. No. 12, as that is the most complete docket entry. Accordingly, the motions to dismiss that appear on the docket as Doc. Nos. 10, 11 and 13 are **DENIED** as **MOOT**.

1

## I. Background

Plaintiff Jose Velez, who proceeds *pro se*, filed his original complaint in August 2018. Velez asserted claims for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and California Civil Code section 51, *et seq.*, (the "Unruh Act"). [Doc. No. 1.] All three defendants filed timely answers to the complaint. [Doc Nos. 3, 4, 5.]

On October 3, 2018, Plaintiff filed his First Amended Complaint ("FAC"). [Doc. No. 7.][2] The FAC alleges that Velez is a disabled person who, on August 6, 2018, visited three restaurants Il Fornaio, located at 1333 1st St, Coronado, CA 92118, Tartine, located at 1106 1st St, Coronado, CA, 92119, and Tacos El Gordo, located at 556 Broadway, Chula Vista, CA 91910 in California. [Doc. No. 7 ¶¶ 4, 6, 20, 23, 24.] While patronizing the restaurants Velez encountered numerous barriers including at the service counters, bar, seating areas and restrooms that make these public accommodations not fully accessible for persons with mobility disabilities. [*Id.* ¶¶ 20, 23, 24.] Plaintiff alleges that the architectural barriers prevented him from enjoying full and equal access to the business establishments. [*Id.* at ¶ 5.]

Defendants Il Fornaio and Tartine filed a motion to dismiss the FAC. [Doc. No. 12.] Plaintiff filed his opposition [Doc. No. 14] and Defendants filed their replies [Doc. Nos. 21, 22.]

## II. Discussion

### A. Legal Standard

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is

---

[2] Defendant Tacos El Gordo answered the FAC [Doc. No. 9] and was subsequently voluntarily dismissed with prejudice by Plaintiff [Doc. Nos. 25, 26].

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004). Because Velez proceeds *pro se*, the court construes his filings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "[w]hile the court must construe *pro se* pleadings liberally and afford plaintiff the benefit of the any doubt, even *pro se* plaintiffs must allege, with a least some degree of particularity, overt acts taken by each defendant which support his claim." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006).

**B. ADA Claim**

Defendants move to dismiss Plaintiff's ADA claim on the grounds that Plaintiff has failed to establish that he is disabled within the meaning of the ADA.

Title III of the ADA prohibits discrimination against disabled persons in any place of public accommodation. 42 U.S.C. § 12182. The concept of discrimination under the ADA includes obviously exclusionary conduct and "more subtle forms of discrimination – such as difficult-to-navigate restrooms and hard-to-open doors that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (quoting 12182(a)).

To establish a violation of Title III of the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. 42 U.S.C. §§ 12182(a)-(b); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). With respect to an individual,

3

3:18-cv-1840-CAB (MDD)

"disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual …." 42 U.S.C. § 12102.

Following the amendment to the ADA a physical or mental impairment was defined in the Code of Federal Regulations as:

> (i) [a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
> (ii) [a]ny mental or psychological disorder, such as an intellectual disability (formally termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.
> (2) Physical or mental impairment includes, but is not limited to, contagious and noncontagious diseases and conditions such as the following: Orthopedic, visual, speech and hearing impairments, and cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, emotional illness, dyslexia, and other specific learning disabilities, Attention Deficit Hyperactivity Disorder, Human Immunodeficiency Virus infection (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

28 C.F.R. § 36.105 (b)(1); §36.104.

Although the Ninth Circuit has yet to address when obesity qualifies as a disability under the ADA, a recent opinion from the court provides a discussion regarding the relevant issues to be considered. In *Taylor v. Burlington N. R.R. Holdings Inc.*, 904 F.3d 846, (9th Cir. 2018), the Court of Appeals certified the question of whether obesity constitutes an "impairment" and thus a "disability" under Washington law to the Washington Supreme Court and acknowledged that the ADA's coverage of obesity is an open question in this circuit. The court provided an analysis of the treatment of obesity under the ADA and suggested that the Washington Supreme Court may wish to consider the EEOC's interpretation of § 1630.2(h) and the amicus brief the EEOC filed in the appeal that was before the court. The EEOC's position was summarized as being that "weight (1) is not an impairment when it is within the "normal" range and lacks a physiological cause

4

but (2) may be an impairment when it is either outside the "normal" range or occurs as the result of a physiological disorder." *Taylor,* 904 F.3d at 851. After reviewing the decisions of other circuits' construction of when obesity qualifies as a disability under the ADA, the Ninth Circuit noted that in 2008 Congress rejected these federal courts' narrow interpretations and passed the ADAAA, pointing out that in passing the amendment "Congress explained 'the definition of disability . . . shall be construed in favor of broad coverage . . . to the maximum extent permitted under the ADA." *Id.* at 852. Following this analysis the court turned to the *Morriss* decision and wrote:

> "Nevertheless, in *Morriss v. BNSF Railway Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016), the Eighth Circuit concluded that the most "natural reading of the [EEOC's] interpretive guidance is that an individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range and it occurs as the result of a physiological disorder."

*Id.*

The Equal Employment Opportunity Commission's ("EEOC") interpretive guidance referred to by the Ninth Circuit concludes that obesity can constitute an impairment under the ADA under some but not all circumstances, stating:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economical characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder. The definition likewise, does not include characteristics predisposition or illness or disease. Other conditions, such as pregnancy, that are not the result of a psychological disorder are also not impairments…
>
> The definition of an impairment also does not include common personality traits such as poor judgment or a quick temper where these are not symptoms of a mental or psychological disorder.

29 C.F.R. Part 1630, app., § 1630.2(h).

5

3:18-cv-1840-CAB (MDD)

Additional insight regarding when obesity should be considered a disability can be garnered from the EEOC's ADA compliance manual which, although withdrawn in 2012, concluded "[b]eing overweight, in and of itself, generally is not an impairment…. On the other hand, severe obesity, which has been defined as body weight more than 100% over the norm …, is clearly an impairment." *EEOC Compliance Manual*, § 902.2(c)(5)(ii) (1995) (superseded in part by ADAAA). The manual also notes that that "[t]he mere presence of an impairment does not automatically mean that an individual has a disability. Whether severe obesity rises to the level of a disability will turn on whether the obesity substantially limits, or has substantially limited, or is regarded as substantially limiting a major life activity." *Id. at* § 902.2(c)(ii) n.16.

In support of their position that Plaintiff has not established a disability for ADA purposes, Defendants cite to the Eighth Circuit Court of Appeals decision, *Morriss v. BNSF Ry. Co*, 817 F.3d 1104 (8th Cir. 2016) *certiorari denied Morriss v. BNSF Ry. Co.*, 137 S. Ct. 256 (2016). In *Morriss,* the court was tasked with determining whether obesity qualified as a physical impairment under the ADA. In reaching its decision, the court relied heavily on one sentence in the EEOC's interpretative guidance: "the definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder." *See* 29 C.F.R. Part 1630, app., § 1630.2(h). After considering the EEOC's interpretative guidance, sister courts' rulings, district court decisions and Congress's stated goal in enacting the ADA Amendments Act (ADAAA), the court concluded for obesity, even morbid obesity, to be considered a physical impairment under the ADA, it must result from an underlying physiological disorder or condition. *Morriss,* 817 F.3d at 1108-1112.

Upon consideration of the issues the Ninth Circuit determined to be germane to the analysis, the Court reads the term disability broadly, defers to the EEOC's interpretation of its own guidance and adopts the definition propounded by the EEOC in the amicus brief filed in *Taylor* - that obesity may be an impairment when it is either outside the "normal"

range or occurs as the result of a physiological disorder. *See Turtle Island Restoration Network v. U.S. Dep't of Commerce,* 878 F.3d 725, 733 (9th Cir. 2017) (a court "must defer to an agency's interpretation of its own ambiguous regulations, which controls unless plainly erroneous or inconsistent with the regulation or where there are grounds to believe that the interpretation does not reflect the agency's fair and considered judgment of the matter in question." (internal quotation marks and citation omitted*). See also BNSF Ry. Co. v. Feit,* 281 P.3d. 225, 229 (Mont. 2012) ("By using the conjunctive '*and,*' the regulation excludes weight from the definition of impairment only if it is *both* 'within "normal" range' *and* 'not the result of a physiological disorder.'") (emphasis in original); *EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688 (E.D. La. 2011) ("a physiological cause is only required when a charging party's weight is within the normal range…if a charging party's weight is outside the normal range – that is, if the charging party is severely obese – there is no explicit requirement that [the] obesity be based on a physiological impairment.).

Here, Plaintiff's FAC alleges that he:

> is a person with mobility-related limitations because [sic] morbid obesity and a binge-eating disorder. For example, his additional weight on his frame makes it more difficult to breathe, walk, stand, and bend; while his binge-eating disorder affects his ability to concentrate and think. Plaintiff is therefore a "disabled" person within the meaning of the ADA and California Code § 12926. The cause of the obesity is, among other, an underlying physiological and/or psychological cause known as binge eating disorder (BED). Because of physiological and/or psychological reasons beyond Plaintiff's control, he experiences recurrent episodes of binge-eating…

[Doc. No. 7 at ¶ 4.]

Applying the above interpretation of when obesity qualifies as a disability under the ADA, Plaintiff has, for pleading purposes, alleged facts sufficient to demonstrate he has a disability. He has alleged that his morbid obesity makes it difficult to perform major life activities such as breathing, standing, walking, bending, concentrating and thinking. *See* 42 U.S.C § 12102(2)(A)-(B). Whether or not Plaintiff can in fact prove his weight rises to

7

the level of a disability under the ADA is best left for summary judgment or a jury – such an analysis is not appropriate at the pleading stage. *See, e.g., Lowe v. Am. Eurocopter, LLC,* 2010 WL 5232523, at * 8 (N.D. Miss. Dec. 16, 2010) *(*"[w]hether or not Plaintiff can in fact *prove* that her weight rises to the level of a disability under the ADA is not at issue here, as a motion to dismiss is not the proper method for evaluating the merits of Plaintiff's specific assertions.") (emphasis in original).

The Court however finds pleading deficient to establish the Plaintiff's Article III standing. A plaintiff must not only establish that he has a disability, he must also establish that he was denied public accommodations by the Defendants because of his disability.

Plaintiff has alleged due to his weight he has difficulty walking, standing and bending,[3] but has offered no facts demonstrating how his alleged disability relates to the barriers he alleges he encountered at the Defendants' facilities. For Article III standing, Plaintiff must allege that he actually encountered at least one barrier to his full enjoyment of the facility **related** to his disability.

Plaintiff only offers conclusory statements that the facilities were not fully accessible to him, but provides no facts to support that conclusion. The motion to dismiss is therefore **GRANTED**, with leave to amend, to allow Plaintiff to articulate facts as to how he was denied public accommodation due to his asserted disability.

### C. Unruh Act Claim

The Court *sua sponte* declines to exercise supplemental jurisdiction over Plaintiff's Unruh claim.

Supplemental jurisdiction to hear state law claims is granted to the federal courts under 28 U.S.C. § 1367(a). The statute provides:

---

[3] Plaintiff has alleged his weight results in difficulties walking but his not asserted he uses a wheel chair or other mobility device that would, for example, relate to the alleged access barriers regarding table heights, or the need for an accessible restroom. Although he may seek remediation of barriers he did not personally encounter, he must provide facts demonstrating that he personally encountered at least one barrier, related to his personal disability, to satisfy the standing requirements.

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "Supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies." *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1028 (S.D. Cal. 2017). A district court may decline supplemental jurisdiction over a state law claim under § 1367(c) if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). While the presence of any of the conditions in § 1367(c) triggers the court's discretion to decline supplemental jurisdiction, it is informed by considering "the values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

When a district court declines supplemental jurisdiction over a state law claim pursuant to any of the first three provisions of §1367(c), the court need not state its reasons for dismissal. *San Petro Hotel Co. v. City of L.A.*, 159 470, 478 (9th Cir. 1988). But, if jurisdiction is declined under § 1367(c)(4), the district court "must articulate whey the circumstances of this case are exceptional." *Id.* (quoting *Exec. Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1557 (9th Cir. 1994)).

Here, Plaintiff has alleged the following ADA Standards of Accessible Design violations at Il Fornaio: (1) all portions of the counter near the entrance are higher than 36 inches above the floor; (2) all portions of the sales counter/bar where alcoholic and non-alcoholic beverages are sold are higher than 36 inches above the floor and the "happy hour"

menu is only available to patrons at the bar area; (3) there is no signage at the inaccessible toilet rooms giving directions to accessible toilet rooms; (4) the pipes below the lavatory are not insulated or otherwise protected; (5) the flush control of the toilet is not on the open side of the water closet; (6) the coat hook is incorrectly mounted; (7) the moveable tables with accessible seating locations are not dispersed throughout all dining areas; and (8) the fixed tables with accessible seating locations are not dispersed throughout all dining areas. [Doc. No. 7 at ¶ 20.] As to Tartine, Plaintiff alleges the following violations: (1) the area around the water closet is not unobstructed; (2) the pipes below the lavatory are not insulated or otherwise protected; (3) the moveable tables do not provide the necessary leg room; (4) the moveable tables with accessible seating locations are not dispersed throughout all dining areas; and (5) the knee clearance of the moveable tables is inadequate. [*Id.* at ¶ 23.] Plaintiff also alleges that Defendant Il Fornaio's website suffers from multiple non-compliance issues and makes an additional claim, on information and belief, that ten other Il Fornaio restaurants located in California, have counters that violate the standard. [*Id.* at ¶¶ 21, 22.]

Notwithstanding the claims surrounding the website and the ten Il Fornaio restaurants Plaintiff has not visited, the 13 allegations, if proven, would entitle Plaintiff to a minimum award of $52,000. *See* CAL. CIV. CODE § 52(a) (The Unruh Act provides that a defendant is "liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000).").  Further, Plaintiff seeks an award of punitive damages under Unruh for every incident of willful discrimination pursuant to California Civil Code section 52(b)(1). Whereas under the ADA, the only relief Plaintiff is entitled to is injunctive relief. Therefore, the Court concludes that the monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief. *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1030 (S.D. Cal. 2017) (finding that monetary damages of $36,000 sought by plaintiff under the Unruh Act substantially predominate over federal

injunctive relief); *see also Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.,* 406 F. Supp. 2d 1120, at 1131 (S.D. Cal. 2005) (holding that potential statutory damage award of $56,000 under Unruh Act substantially predominated over injunctive relief under the ADA); *Molski v. Hitching Post I Rest., Inc.,* No. CV 04-1077SVWRNBX, 2005 WL 3952248, at *7 (C.D. Cal. May 25, 2005) (concluding that the potential $52,000 damages award available under Unruh Act versus the injunctive relief and attorneys' fees available to plaintiff under the ADA was disproportionate enough to substantially predominated over the federal claims).

Furthermore, an additional compelling reason to decline supplemental jurisdiction in this case is provided by the legislative history to the Unruh Act itself. In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act. *See* CAL. CIV. PRO CODE § 425.50[4]; SB 1186, Chapter 383 § 24 (Ca. 2012). "Therefore, as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim." *Schutza*, 262 F. Supp. 3d at 1031. *See also Schutza v. Lamden*, Case No.: 3:17-cv-2562-L-JLB, 2018 WL 4385377, at *5. (S.D. Cal. Sept. 14, 2018) (finding it improper to allow plaintiff to use the federal court as an end-around to California's pleading requirements); *Hitching Post I,* 2005 WL 3952248 at *8-9 (declining compelling reasons exists to decline supplemental jurisdiction over Unruh Act claims including "California courts should be given an opportunity to interpret California's disability laws, … , and because the parties themselves are entitled surer-footed interpretation of California's disability laws").

---

[4] Under the Unruh Act a plaintiff alleging disability discrimination must include in his complaint: (1) an explanation of the specific access barrier or barriers encountered; (2) the way in which the barrier denied the individual full and equal access, or in which it deterred the individual on each particular occasion. (3) the date/s when the claimant encountered the specific barriers. The section also contains additional requirements for high-frequency litigants. CAL. CIV. PROC. CODE § 425.50.

### III. Conclusion

In accordance with the foregoing, Defendants' motion to dismiss is **GRANTED**. [Doc. No. 12.] Because the Court has *sua sponte* declined to exercise supplemental jurisdiction over Plaintiff's state law claim, Plaintiff's California Unruh Act claim is **DISMISSED WITHOUT PREJUDICE** to asserting it in state court. Plaintiff shall file an amended complaint no later than **December 28, 2018**.

It is **SO ORDERED**.

Dated: December 10, 2018

Hon. Cathy Ann Bencivengo
United States District Judge