UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VELEZ,<br><br>                              Plaintiff,<br><br>v.<br><br>IL FORNAIO (AMERICA) CORPORATION and TARTINE, INC.,<br><br>                             Defendants. | Case No.: 18-CV-1840-CAB-MDD<br><br>**ORDER GRANTING MOTION TO DISMISS AND DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>[Doc. No. 29] |

In this lawsuit, Plaintiff Jose Velez alleges that two separate restaurants[1] are not compliant with the Americans with Disabilities Act ("ADA"). After Velez filed a first amended complaint ("FAC"), Defendants Il Fornaio (America) Corporation ("Il Fornaio") and Tartine, Inc. ("Tartine") filed motions to dismiss. The Court granted those motions on December 10, 2018, dismissing the ADA claim for lack of Article III standing and declining to exercise supplemental jurisdiction over Velez's claim for violation of California's Unruh Civil Rights Act. [Doc. No. 27.] The Court's order gave Velez leave to amend his ADA claim, and Velez filed a second amended complaint ("SAC") on

---

[1] The original and first amended complaints also asserted that a third restaurant was not compliant. The Court granted a motion dismissing the claims against the owner of that restaurant with prejudice on November 20, 2018. [Doc. No. 26.]

December 17, 2018. [Doc. No. 28.] Defendants now move to dismiss the SAC [Doc. No. 29], and Velez has filed his opposition [Doc. No. 31]. The Court deems the motion suitable for submission without oral argument. As discussed below, the motion is granted, and the SAC is dismissed with prejudice.

## I. Allegations in the Second Amended Complaint

Ordinarily, a complaint alleging ADA violations at a place of public accommodation involves one plaintiff and one defendant concerning one location and clear allegations of the plaintiff's disability, along with when he visited the property in question and how the alleged ADA violations were a barrier to access for the plaintiff. The forty-eight page SAC is not an ordinary complaint. It consists primarily of legal argument and commentary that has no place in a properly pled complaint. The extent of this unnecessary extraneous information complicates the Court's (and Defendants') ability to discern whether or if Velez has alleged claims for which he has standing to sue. Only the sparse allegations relevant to any claim Velez may have will be summarized here.

The SAC alleges that Velez is disabled within in the meaning of the ADA because he has "mobility-related limitations" caused by morbid obesity. [Doc. No. 28 at ¶ 6.] The SAC explains:

> Plaintiff's Body Mass Index is approximately 44. His additional weight on his frame makes it more difficult to, for example, breathe, walk[,] stand, and bend. As an individual with higher waist circumference and body mass index of approximately 44.4, Plaintiffs [sic] suffers difficulty in bending, kneeling, stooping, lifting and carrying. The problems with executing these basic physical tasks creates limitations in maintaining strength and mobility, as well as in performing basic activities of daily living. Plaintiff's increased body weight does interfere with his normal musculoskeletal function through a variety of kinetic and kinematic impairments, which causes impaired balance, abnormal gait patterns and increased incidence of muscle weakness. Because of this, Plaintiff, like older adults, is in increased risk for falls. Plaintiff's gait is compromised through reduced velocity, cadence, step width, and step length, as well as stance duration. Problems with executing these basic physical tasks creates limitations in maintaining strength and mobility, as well as in performing basic activities of daily living. As to Plaintiff's ability to stand, Plaintiff uses an altered strategy for sit-to-stand (and vice versa) due to

> back pain, lack of strength, and lack of balance. Plaintiff's Morbid obesity is, by itself, a "disability" because it is a physical impairment: a condition that affects one or more body systems (neurological, musculoskeletal, repiratory, cardiovascular, ability to walk, stand, run, bend).

[*Id.*] Notwithstanding the foregoing, the SAC acknowledges that Velez is able to walk and is not confined to a wheelchair. [*Id.* at 13 n.2.] Instead, the SAC asserts that "[i]t is Plaintiff [sic] position that he is free to use a motorized scooter given his morbid obesity to make his life easier; i.e., avoid pain related to prolonged standing, for example." [*Id.*]

It is unclear from the SAC where Velez resides, but on the civil cover sheet accompanying the original complaint, Velez, who is proceeding *pro se*, listed an address in Orlando, Florida. Nevertheless, the ADA violations alleged in the SAC concern two separate restaurants located in Coronado, California. The SAC confusingly refers to these two restaurants in the singular as the "Subject Property" [*Id.* at ¶ 9], but it does not explain why these two separate restaurants are joined as defendants in this lawsuit. Il Fornaio's eponymous restaurant is located at 1333 1st Street, while Tartine's eponymous restaurant is located at 1106 1st Street, approximately .3 miles away.[2] This deceptive pleading is particularly problematic because the SAC only asserts two claims, one for violation of the ADA and one for violation of the Unruh Act, jointly against both defendants.[3]

---

[2] The third property identified in the original complaint and since dismissed is located at 556 Broadway in Chula Vista, California, which is approximately 9.5 miles away from Il Fornaio and Tartine.

[3] Defendants point out in their motion that they are entirely separate entities that own entirely separate restaurants, and speculate that Velez sued them in one lawsuit to avoid paying the multiple filing fees he would have to pay if he filed a separate lawsuit against each Defendant. Velez does not address this argument in his opposition and continues to refer to the "subject property" in the singular even though his complaint alleges violations at two separate restaurants. The SAC's joinder of Il Fornaio and Tartine as co-defendants runs afoul of Federal Rule of Civil Procedure 20 because any injuries that Velez could have suffered did not arise out of the same transaction, occurrence, or series of transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."). Thus, if the Court was not dismissing the SAC on Article III standing grounds, it would conduct a prejudice analysis as to whether to dismiss the SAC without prejudice to Velez re-filing two separate lawsuits or to sever the SAC as to the claims against each Defendant and to require Velez to pay an additional filing fee. *See generally Rush v. Sport Chalet, Inc.*,

*Il Fornaio*

Although the SAC never expressly alleges when or if Velez visited Il Fornaio, for the purposes of this motion, the Court assumes that Velez intended to allege that he visited the restaurant on August 6, 2018, because that date appears frequently throughout the SAC. The SAC alleges several areas of the restaurant that allegedly do not comply with ADA design standards, including:

- Service counters were too high.
- Restroom grab bars were not installed properly.
- Clearance below the lavatory was inadequate.
- Pipes below the lavatory were not insulated.
- The toilet flushing mechanism was on the wrong side of the toilet.
- The coat hook in the restroom stall was too high.
- A ramp within the restaurant was too steep and did not contain adequate handrails.
- Accessible tables were not adequately dispersed throughout all dining areas.

[*Id.* at ¶ 27.] The SAC alleges that Velez "is aware of" or "encountered" these alleged violations and that he is deterred from patronizing Il Fornaio using a motorized scooter, but it does not allege that he was using a motorized scooter when he visited the restaurant or that any of these violations were a barrier to him while he was there.[4]

*Tartine*

As with Il Fornaio, the SAC is vague as to when or if Velez ever visited Tartine. It alleges only "on information and belief" that certain ADA violations existed at the restaurant as of August 6, 2018. [*Id.* at ¶ 28.] Those alleged violations include:

---

779 F.3d 973, 975 (9th Cir. 2015) (holding that separate retail establishments may have been misjoined in ADA case but that district court abused discretion by dismissing rather than severing the complaint without evaluating the prejudice to the plaintiff).

[4] For at least one of the bathroom violations, the SAC even states that Velez was not adversely impacted. [*Id.* at 17.]

- Inadequate clearance around the water closet.
- Pipes below the lavatory were not insulated.
- Inadequate moveable accessible tables.

[*Id.*] The SAC alleges that Velez "encountered" these alleged violations, but does not specify the date on which he visited Tartine or how these violations impacted him when he visited the restaurant.[5]

## II. Legal Standards

As stated in the Court's order dismissing the FAC, under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004). Because Velez proceeds *pro se*, the court construes his filings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "[w]hile the court must construe *pro se* pleadings liberally and afford plaintiff the benefit of the any doubt, even *pro se* plaintiffs must allege, with a least some degree of particularity, overt acts taken by each defendant which support his claim." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006).

---

[5] In paragraph 30, the SAC alleges that Velez "personally encountered the architectural barriers that constitute ADA violations at the Subject Property on the date stated in paragraph 20 and was denied full and equal access because of these violations." The only dates in paragraph 20 of the SAC relate to the applicability of ADA standards. The latest date in that paragraph is March 15, 2012.

Here, however, because the motion also raises issues of Article III standing, it also implicates Federal Rule of Civil Procedure 12(b)(1). "While review for failure to state a claim under 12(b)(6) is generally confined to the contents of the complaint, in determining constitutional standing, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (internal citation and quotation marks omitted). This "jurisdictional question of standing precedes, and does not require, analysis of the merits." *Id.* (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)). As the Ninth Circuit explains:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Seldin*, 422 U.S. at 501, 95 S.Ct. 2197. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130 (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 n. 3, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (cautioning that while at the summary judgment stage, the court "require [s] specific facts to be adduced by sworn testimony," a "challenge to a generalized allegation of injury in fact made at the pleading state ... would have been unsuccessful").

*Id.* at 1068.

### III. Discussion

For Velez's ADA claim to proceed, the allegations in the SAC must demonstrate that he has both Article III standing and statutory standing under the ADA itself. The SAC does not satisfy either requirement.

#### A. Article III Standing

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited

6

jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citation omitted). Article III of the Constitution confers on federal courts the power to adjudicate only cases or controversies. U.S. Const., art. III, § 2. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). This "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The concern here relates to the first element—injury in fact, "the first and foremost of standing's three elements." *Id.* (citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). To that end, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating" the existence of an injury in fact. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Thus, for Velez to have Article III standing, the SAC must allege facts demonstrating that Velez has suffered a concrete injury as a result of the ADA violations alleged in the SAC.

The SAC does not satisfy this requirement. Although the SAC complains of inadequate seating and ramps for individuals in wheelchairs, along with other alleged violations concerning wheelchair accessibility to the restrooms at the restaurants, Velez was not in a wheelchair when he visited the restaurants. The SAC otherwise fails to allege how any of these design violations were a barrier to his full and equal enjoyment of the restaurants when he visited them. *See Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) (noting that "a 'barrier' will only amount to [interference with

access to a place of public accommodation] if it affects the plaintiff's full and equal enjoyment of the facility *on account of his particular disability*") (*emphasis* added). Instead, the SAC appears to allege that the design violations would have impacted him if he had been in a scooter or wheelchair when he visited the restaurants.[6] Such speculation is insufficient to establish an injury in fact.

In sum, the SAC does not allege any facts demonstrating that Velez suffered an injury in fact when he visited the restaurants. Further, considering that Velez lives in Florida and is not confined to a wheelchair, his assertions that these alleged ADA violations deter him from visiting the restaurants in the future are both implausible and too speculative to give Velez Article III standing. Accordingly, the SAC is subject to dismissal for lack of subject matter jurisdiction.

### B. Statutory Standing

"Statutory standing, unlike constitutional standing, is not jurisdictional." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011) (internal quotation marks and citation omitted). Statutory (also referred to as "prudential") standing concerns, among other things, whether the law invoked was intended to create a private right of action for the plaintiff. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-128 (2014). The question, therefore, is whether the ADA created a private right of action for Velez based on the allegations in the SAC.

Title III of the ADA "prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42

---

[6] The SAC does not allege that Velez dined at these restaurants without a wheelchair or scooter only because the restaurants could not accommodate a patron such devices. That Velez, on his own volition, was not using a wheelchair or scooter and yet was still able to dine at Defendants' restaurants without any problems at a minimum demonstrates that Velez did not actually suffer any barrier to access as a result of any of the ADA violations alleged in the SAC.

8

U.S.C. §§ 2000a(b), 12182(a)). "An individual alleging discrimination under Title III must show that: (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). Thus, to have standing to assert an ADA claim, Velez must be disabled himself, and the alleged ADA violations must have affected his specific disability.

### 1. The SAC Does Not Contain Factual Allegations Demonstrating That Velez Is Actually Disabled

In its order dismissing the FAC, the Court held that Velez had adequately pled that he has a disability under the ADA. Upon further consideration in light of the SAC, however, the Court is no longer convinced that, assuming the truth of the allegations in the SAC, Velez has sufficiently alleged that he qualifies as disabled under the ADA. Under the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The SAC and opposition focus on caselaw and authority addressing whether obesity is a "physical or mental impairment." Whether obesity is a physical or mental impairment, however, addresses only half of the definition of disability. Even assuming that obesity qualifies as a physical or mental impairment, an obese person is not disabled under the ADA unless the obesity substantially limits one or more major life activities of the individual. The SAC does not allege any such substantial limitation. A substantial portion of society can probably claim some level of "difficulty bending, kneeling, stooping, lifting and carrying," as is alleged in the SAC, but such vague allegations of difficulties, without more, do not constitute a substantial limitation of any major life activity.

This case is distinguishable from recent cases considering alleged discrimination of obese individuals by employers in violation of the ADA. *See, e.g., Taylor v. Burlington N.*

*R.R. Holdings, Inc.*, 904 F.3d 846 (9th Cir. 2018) (considering whether employer discriminated under Washington law when it perceived applicant to be physically impaired as a result of his weight); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104 (8th Cir. 2016) (considering an obese applicant's "regarded as" ADA discrimination claim). These other cases address whether obesity is an impairment and do not stand for the proposition that an obese person is necessarily disabled. To the contrary, unlike Velez here, the plaintiffs in these employment cases contend that they are not actually disabled, only that they were perceived as disabled. That these plaintiffs did not consider themselves actually disabled underscores that obesity is not in and of itself a disability. Moreover, a holding that obesity is an impairment is all those plaintiffs would need to proceed with their "regarded as" discrimination claims. *See* 42 U.S.C. § 12102(3)(A). Accordingly, the SAC has failed to allege that Velez qualifies as disabled under the ADA as a result of his obesity.[7]

### 2. The Alleged ADA Violations Did Not Impact Velez's Disability

Even assuming for the purposes of this opinion that Velez's obesity qualifies him as disabled under the ADA, the statutory standing inquiry does not end. "An individual with a disability has 'standing to seek relief for any ADA violations . . . affecting his specific disability,' and does not have standing to pursue claims that do not affect his disability." *Moeller v. Taco Bell Corp.*, No. C 02-5849 MJJ, 2005 WL 1910925, at *4 (N.D. Cal. Aug. 10, 2005) (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir. 2000)). Thus, "[a] disabled individual cannot vindicate the rights of disabled persons generally." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1083 (D. Haw. 2000).

The analysis here is similar to that concerning Velez's lack of Article III standing. None of the ADA design guidelines that Defendants' allegedly violated were intended to

---

[7] This holding is limited to the specific facts here and is not a holding that no obese person can ever qualify as disabled under the ADA. Assuming obesity is a physical impairment under the ADA, an individual whose obesity prohibits her from walking or at least more severely limits her mobility or other life activities may qualify as disabled. That is simply not the case with an individual like Velez who, according to the SAC, is able to (and does) walk without assistance and has only made vague and generic allegations of difficulties purportedly attributable to his obesity.

accommodate obese people who are able to (and choose to) walk without assistance. That Velez encountered alleged ADA violations that would have impacted someone confined to a wheelchair or motorized scooter does not qualify Velez, who was not using a wheelchair or scooter when visiting the restaurants, to bring suit under the ADA concerning those violations. Accordingly, even if Velez qualifies as disabled, he has not alleged that either Defendant "discriminated against [him] based upon [his] disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate [his] disability." *Fortyune*, 364 F.3d at 1082.

### C. The Court Has Already Declined Supplemental Jurisdiction Over the Unruh Act Claim

In the order dismissing the FAC, the Court declined to exercise supplemental jurisdiction over Velez's Unruh Act claim. The order did not give Velez leave to amend this claim, and this claim should not have been included in the SAC. Therefore, this claim is dismissed again as well.

### IV. Disposition

The SAC does not allege facts demonstrating that Velez is disabled or that Velez suffered any injury while visiting either of the restaurants. Accordingly, Velez lacks Article III and statutory standing to sue for the ADA violations alleged in the SAC. Because Velez has been unable to state an ADA claim for which he has standing in any of the three complaints filed in this action, further amendment would be futile. The SAC is therefore **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED**.

Dated: February 22, 2019

Hon. Cathy Ann Bencivengo
United States District Judge